**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PLATYPUS WEAR, INC. d/b/a BAD BOY BRANDS, | CIVIL NO. 08-02662(NLH)(AMD) |
| Plaintiff, | **OPINION** |
| v. | |
| BAD BOY CLUB, INC., BBC-SK8 SHOP, LLC and EDWARD RUNNER, | |
| Defendants. | |

APPEARANCES:

Gavin I. Handwerker, Esquire
NISSENBAUM LAW GROUP, LLC
2400 Morris Avenue, 3rd Fl.
Union, NJ 07083

    *Attorney for plaintiff*

    **HILLMAN**, District Judge

    This matter comes before the Court on plaintiff's motion for default judgment and permanent injunction on plaintiff's trademark infringement, unfair competition, and dilution claims. For the reasons expressed below, plaintiff's motion will be granted in part and denied in part.

**I.   BACKGROUND**

    This suit was brought by Platypus Wear, Inc., d/b/a Bad Boy Brands against Bad Boy Club, Inc., BBC-SK8 Shop, LLC, and Edward

Runner[1] for infringement of the trademarks "Bad Boy"[2] and "Bad Boy Club,"[3] which is a caricature of a boy flexing his arm.[4] Defendants use these marks at their retail business "Bad Boy Club Surf Skate-Snow," in its name and exterior sign, and on the World Wide Web in the form of advertising and listing. Plaintiff filed its complaint only after defendants failed to respond to two letters plaintiff sent them that informed defendants that plaintiff owns the "Bad Boy Club" marks and asked defendants to desist in using them. Defendants were served with the summons and complaint, but they have not answered the complaint or responded in any manner.[5] With no answer or response, plaintiff now requests the

---

[1]Plaintiff also named Michael Shoppe as a defendant but in its motion plaintiff asks the Court to dismiss all claims against Mr. Shoppe.

[2]USPTO Registration No. 76037086, registered April 28, 2000; USPTO Registration No. 74730490, registered March 18, 1997; USPTO Registration No. 2060484, registered May 13, 1997.

[3]USPTO Registration No. 1,469,124, registered December 15, 1987.

[4]Plaintiff's complaint alleges eight counts, but in its motion it states it wishes to dismiss four counts and only requests default judgment on the remaining four counts, which are: (1) federal trademark infringement in violation of 15 U.S.C. § 1114; (2) federal unfair competition in violation of 15 U.S.C. § 1125(a); (4) statutory dilution under N.J.S.A. 56:3-13.20; and (6) unfair competition and misappropriation under N.J.S.A 56:4-1. Plaintiff requests statutory damages, injunctive relief, and attorney's fees and costs.

[5]Plaintiff tried numerous times to personally serve defendants. The first attempts were made in June and July of 2008. After these attempts at personal service failed, plaintiff filed an application with the Court asking to serve defendants through alternative means pursuant to Fed. R. Civ. P. 4(e)(1).

entry of default against defendants pursuant to Fed. R. Civ. P.
55(a).  Plaintiff also requests default judgment on four counts of
the complaint as well as an injunction permanently enjoining
defendants from using the marks.  Plaintiff alleges that: (1)
plaintiff owns valid and enforceable trademark rights in the marks
"Bad Boy" and "Bad Boy Club;" (2) defendants' use is unauthorized;
(3) defendants' use will likely confuse the public with regard to
the origin and sponsorship of the product; (4) defendants' use of
the mark is deliberate and willful; and (5) the harm suffered is
irreparable.

## II.  JURISDICTION

This Court has original jurisdiction over plaintiff's claims
arising under federal law pursuant to 28 U.S.C. § 1331, and
supplemental jurisdiction over plaintiff's state law claims
pursuant to 28 U.S.C. § 1367.

---

The Court granted plaintiff's request on September 19, 2008.
Plaintiff then served defendants through the alternative means
(certified mail, return receipt requested, and regular mail).
All packages sent to defendants via certified mail, return
receipt requested were returned by the United States Post Office
as refused.  However, the packages sent to defendants via regular
mail were not returned.  Thus, service is deemed effected.  See
Fed. R. Civ. P. 4(e)(1) (providing that service may be effected
by "following state law for serving a summons in an action
brought in courts of general jurisdiction in the state where the
district court is located or where service is made[.]");
Citibank, N.A. v. Russo, 759 A.2d 865, 868 (N.J. Super. Ct. App.
Div. 2000) (stating service is valid by regular mail even if
defendant does not answer or appear or certified mail was
returned).

**III. DISCUSSION**

    A.   Default

The first step in obtaining a default judgment is the entry of default. "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Plaintiff has established that defendants failed to "plead or otherwise defend" by presenting a certification documenting its service on defendants. Defendants are therefore in default and it should be entered by the Clerk.[6]

    B.   Default Judgment

"Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to a file a timely responsive pleading." Chanel v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008) (citing Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990)). A party seeking default judgment "is not entitled to a default judgment as of a right," however. Franklin v. Nat'l Maritime Union of America, 1991 S. Dist LEXIS 9819, at *3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice

---

[6]Typically, a plaintiff moves for default pursuant to Rule 55(a) separately from its motion for default judgment. Due to the particular circumstances of this case, judicial economy warrants this combined motion.

and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992).
The decision to enter a default judgment is "left primarily to the
discretion of the district court."  Hritz v. Woma Corp., 732 F.2d
1178, 1180 (3d Cir. 1984).

Although every "well-pled allegation" of the complaint, except
those relating to damages, are deemed admitted, Comdyne I. Inc. v.
Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990), before entering a
default judgment the Court must decide whether "the unchallenged
facts constitute a legitimate cause of action, since a party in
default does not admit mere conclusions of law," Chanel, 558 F.
Supp. 2d at 535 (citing Directv, Inc. v. Asher, No. 03-1969, 2006
WL 680533, at *1 (D.N.J. Mar. 14, 2006)).  If a review of the
complaint demonstrates a valid cause of action, the Court must then
determine whether plaintiff is entitled to default judgment.

C. Analysis

1. Whether Plaintiff has Stated Viable Causes of Action

a. Federal Claims

As noted above, plaintiff seeks a default judgment on the
following federal claims: federal trademark infringement in
violation of 15 U.S.C. § 1114 and federal unfair competition in
violation of 15 U.S.C. § 1125(a).  "Federal trademark infringement,
15 U.S.C. § 1114(1)(a), and a false designation of origin claim, 15
U.S.C. § 1125(a)(1)(A), are measured by identical standards

5

pursuant to the Lanham Act."[7]  Chanel, 558 F. Supp. 2d at 536
(citing A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.,
237 F.3d 198, 210 (3d Cir. 2000)).  To establish either Lanham Act
claim, the record must demonstrate that (1) plaintiff has a valid
and legally protectable mark; (2) plaintiff owns the mark; and (3)
the defendant's use of the mark to identify goods or services
causes a likelihood of confusion.  Id.  The first two requirements
are satisfied when a federally registered mark becomes
incontestable; meaning the owner has filed affidavits stating that
the mark is registered, that it has been in continuous use for five
consecutive years, and that there has been no adverse decision
concerning the registrant's ownership or right to registration.
Fisons Horticulture, Inc. v. Vigoro Indus., Inc., 30 F.3d 466, 472
(3d Cir. 1994).  Here, plaintiff has established the first two
elements.  Plaintiff has demonstrated that it has valuable and
legally protectable marks, "Bad Boy" and "Bad Boy Club," and that
it owned such marks.  Morever, the marks were registered in 1987,
1997, and 2000, and have been used continuously for the required
number of years.

Plaintiff has also established the third element.  A
likelihood of confusion exists "when the consumers viewing the mark
would probably assume that the product or service it represents is

---

[7]Accordingly, the first two counts will be dealt with under
one analysis.

associated with the source of a different product or service identified by a similar mark." Ford Motor Co. v. Summit Motor Prods., Inc., 930 F.2d 277, 292 (3d Cir. 1991) (citing Scott Paper Co. v. Scott's Liquid Gold, Inc., 589 F.2d 1225, 1229 (3d Cir. 1978)). "Proof of actual confusion is not necessary; likelihood is all that need be shown." Opticians Ass'n of America v. Indep. Opticians of America, 920 F.2d 187, 195 (3d Cir. 1990). To determine if two similar marks are likely to cause confusion, ten factors have been considered, including:

> (1)the degree of similarity between the owner's mark and the alleged infringing mark; (2) the strength of owner's mark; (3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase; (4) the length of time the defendant has used the mark without evidence of actual confusion arising; (5) the intent of the defendant in adopting the mark; (6) the evidence of actual confusion; (7) whether the goods, though not competing, are marketed through the same channels of trade and advertised through the same media; (8) the extent to which the targets of the parties' sale efforts are the same; (9) the relationship of the goods in the minds of the public because of the similarity of function; and (10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market.

Freedom Card, Inc. v. JPMorgan Chase & Co., 432 F.3d 463, 470 (3d Cir. 2005) (citing Interpace Corp. v. Lapp, Inc., 721 F.2d 460, 463 (3d Cir. 1983)). While all factors should be considered, the degree of similarity seems to be most important. Ford, 930 F.2d at 292. "If the overall impression created by marks is essentially the same, 'it is very probable that the marks are confusingly similar.'" Opticians, 920 F.2d at 195 (quoting 2 McCarthy,

7

Trademarks and Unfair Competition at § 23:7).

Plaintiff's registered "Bad Boy Club" mark, shown in Exhibit A of its complaint, is a distinct image of a boy flexing his arm with the words "Bad Boy" located above the boy's head and the word "Club" located below the boy's arm.  This so-called "character" mark is used to designate the source of plaintiff's products on promotional materials, advertising, and commercial products.  An identical image, shown in Exhibit B of the complaint, appears on the exterior sign of defendants' store.  Because these two marks appear identical, defendants' use will likely cause confusion.  Moreover, plaintiff's mark "Bad Boy" is also being utilized by defendants because they have named their store "Bad Boy Club Surf-Skate-Snow" and have advertised and listed the store on the World Wide Web.  Defendants plainly use plaintiff's name "Bad Boy," and because defendants and plaintiff are both in the business of selling athletic clothing, there is likely to be confusion as to the origin of the products.

Therefore, plaintiff's allegations[8] are sufficient to state a cause of action that defendants infringed plaintiff's registered trademark in violation of the Lanham Act by intentionally and unlawfully using such marks to cause confusion as to their products origin.

---

[8]Because defendants are in default, the Court accepts plaintiff's allegations as true.

(b) State Claims

Plaintiff also seeks default judgment on two state counts, statutory dilution and unfair competition and misappropriation under New Jersey law.  In order for a plaintiff to establish a cause of action under New Jersey's dilution law, N.J.S.A. 56:3-13.20, plaintiff must show that defendants use plaintiff's marks, those marks are famous, and that defendants' use causes dilution of the distinctive quality of the mark.  To determine if a mark is famous the court should consider:

> (a) the degree of inherent or acquired distinctiveness of the mark; (b) the duration and extent of use of the mark; (c) the duration and extent of advertising and publicity of the mark; (d) geographical extent of the trading area in which the mark is used; (e) the channels of trade for the good or services with which the registrant's mark is used; (f) the degree of recognition of the registrant's mark in its and in the other's trading area and channels of trade; and (g) the nature and extent of the use of the same or similar mark by third parties.

N.J.S.A. 56:3-13.20.  In plaintiff's complaint, it alleges that the marks have been used continuously for a number of years, that the trademarks are well and favorably known among consumers, and that the trademarks are widely publicized and recognized in the State of New Jersey as being identified with plaintiff.  Plaintiff, however, has not alleged facts sufficiently specific to establish the factors needed to consider the mark as famous.  Plaintiff simply makes conclusory statements that its marks are famous, which is insufficient to state a cause of action.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2006) ("A plaintiff's obligation to

provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). Because of the general description of the marks, the Court can not determine as a matter of law if plaintiff's marks are famous.[9] Therefore, plaintiff has not stated a cause of action under New Jersey's dilution law.[10]

Plaintiff's other state law cause of action is unfair competition, N.J.S.A 56:4-1, which is identical to Section 43(a) of the Lanham Act. <u>Pharmacia Corp. v, Alcon Laboratories, Inc.</u>, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) (citing <u>Apollo Distrib. v. Jerry Kurtz Carpet Co.</u>, 696 F. Supp 140, 143 (D.N.J. 1988)). Therefore, because the Court has found that plaintiff has stated a viable cause of action under the federal unfair competition law, it also finds that plaintiff has stated a viable cause of action under New

---

[9]Even if the mark was famous, plaintiff would still need to establish that there was actual dilution that lessened the capacity of plaintiff's mark to identify and distinguish goods or services. <u>Times Mirror Magazines, Inc. v. Las Vegas Sports News</u>, 212 F.3d 157, 163 (3d Cir. 2000). The factors considered to determine whether there has been dilution under the federal statute include: "actual confusion and likelihood of confusion, shared customer and geographic isolation, the adjectival quality of the junior use, and the interrelated factors of duration of the junior use, harm to the junior use, and delay by the senior user in brining the action." <u>Id.</u> at 168. Plaintiff has not properly alleged these elements either.

[10]The Court notes that plaintiff withdrew its federal dilution claim, which applies the same analysis as a state dilution claim. <u>800-JR Cigar, Inc. v. GoTo.com, Inc.</u>, 437 F. Supp. 2d 273, 294 (D.N.J. 2006).

Jersey's statutory unfair competition law.

   2. Whether Plaintiff is Entitled to a Default Judgment

Now that it has been determined that plaintiff has stated viable causes of action for unfair competition under the Lanham Act and New Jersey state law and for federal trademark infringement, it must be determined whether plaintiff is entitled to a default judgment.  As stated above, prior to entering judgment on the counts where a valid cause of action has been established, three factors must be considered: (1) prejudice to the plaintiff if default judgment is not granted; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's delay was the result of culpable misconduct.  Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

   a. Prejudice to the Plaintiff

In deciding whether plaintiff will be prejudiced, the Court can consider: (1) loss of available evidence; (2) increased potential for fraud; and (3) substantial reliance on the judgment. Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir. 1982).  Here, plaintiff will be prejudiced absent a default judgment.  It appears that the businesses of plaintiff and defendants are both in the athletic clothing industry.  Because defendants use the "Bad Boy" and "Bad Boy Club" marks to advertise and sell their clothing, the products of defendants will likely be

confused with plaintiff's products.  See Maxnet Holdings, Inc. v. Maxnet, Inc., No. Civ. 98-3921, 1998 WL 855490, at *3 (E.D. Pa. Dec. 10, 1998) (holding that because both the plaintiff and the defendant were in the computer industry and the defendant operated under the plaintiff's name the defendant's goods and services would be confused as the plaintiff's).  Without a default judgment, defendants' infringement of plaintiff's marks will likely continue because defendants have not answered the numerous requests – both formal by way of this lawsuit and more informal by way of numerous letters – to stop using plaintiff's trademarks.  Plaintiff has appeared to exhaust all available methods to inform defendants of their trademark violation, and without this judgment, then plaintiff will be prejudiced because it has no other recourse. See, e.g., Frank Music Corp. v. Emerson's Pub, Inc., No. 4:08-CV-0532, 2009 WL 744964, at *1 (M.D. Pa. Mar. 18, 2009) ("If default is denied, plaintiffs face the prejudice of being unable to proceed with this action and the potential continued infringement of their copyrighted works.").

> b. Existence of a Meritorious Defense

"A claim, or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." Poulis v. State Farm Fire and Cas. Co., 747 F.2d 863, 869-70 (3d Cir. 1984); accord United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984); Feliciano, 691 F.2d at

657; <u>Farnese v. Bagnasco</u>, 687 F.2d 761, 764 (3d Cir. 1982). Here, it is axiomatic that the Court cannot consider defendants' defenses because defendants have failed to respond to this action. <u>See</u> <u>Prudential Ins. Co. of America v. Taylor</u>, No. 08-2108, 2009 WL 536403, at *1 (D.N.J. 2009) ("[B]ecause Ms. Ducker has not answered or otherwise appeared in this action, the Court was unable to ascertain whether she has any litigable defenses."). It appears, however, that defendants would not have a meritorious defense because "Bad Boy" and "Bad Boy Club" are plaintiff's registered trademarks. <u>See</u> <u>Maxnet</u>, 1998 WL 855490 at *3 ("[T]he Defendant does not have a meritorious defense. Maxnet is a registered trademark ® of Maxnet Systems. Maxnet Systems is a privately held operating company of Maxnet Holdings."). There is also no evidence presented that shows the existence of a licensing agreement allowing defendants to use plaintiff's marks. <u>See</u> <u>Broad. Music,</u> <u>Inc. v. Spring Mount Area Bavarian</u>, 555 F. Supp. 2d 537, 542 (E.D. Pa. 2008) (stating that since the parties had not entered into a licensing agreement and had no possible contractual dispute there was no defense). Because it is unrefuted that the trademarks are registered and owned by plaintiff, the Court finds that had defendants appeared in this action, they most likely would not have provided a meritorious defense.

    c. Whether Defendants' Delay is the Result of
     Culpable Conduct

Defendants' delay appears to be the result of culpable

conduct.  "Culpable conduct is dilatory behavior that is willful or in bad faith."  Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123 (3d Cir. 1983).  Plaintiff presented exhibits establishing that it properly served defendants.  There is nothing before the Court to suggest that defendants' failure to respond to plaintiff's complaint was caused by anything other than defendants' own culpability and willful negligence.  See Prudential, 2009 WL 536403 at *1 ("[T]here was nothing before the Court to suggest that anything other than Ms. Ducker's willful negligence caused her failure to file an answer, and she was therefore culpable."); cf. Gross, 700 F.2d at 123 (holding that a "breakdown in communication" between the defendant and the plaintiff was not culpable conduct attributable to the defendant because the defendant was "actively attempting to contact" the plaintiff).  Here, there is nothing in the record to suggest that defendants tried to contact plaintiff. Without any evidence suggesting otherwise, the Court concludes that the delay is due to defendants' culpable conduct.

Because the Court has found that plaintiff has established three valid causes of action, and that the Chamberlain factors weigh in favor of default judgment, the Court finds that plaintiff is entitled to judgment.

3. Remedies

a. Statutory Damages

Now that it has been determined that plaintiff is entitled to a default judgment, the appropriate amount of damages must be

14

determined.  When a plaintiff establishes a violation of its
trademarks, it is entitled to recover damages measured by the
defendant's profits.  15 U.S.C. § 1117(a).  Alternatively, a
plaintiff may elect to recover statutory damages for the use of a
counterfeit.  15 U.S.C. § 1117(c).  For statutory damages, the
plaintiff may recover not less than $1,000 or more than $200,000
per counterfeit mark.  Id.  If the court finds that the use of the
counterfeit was willful, then the maximum amount recoverable is
extended to $2,000,000.  Id.  In order for plaintiff to receive the
maximum amount of damages, defendants' willful conduct must have
included an "aura of indifference to plaintiff's rights" or a
"deliberate and unnecessary duplicating of a plaintiff's mark . . .
in a way that was calculated to appropriate or otherwise benefit
from the good will the plaintiff had nurtured."  Chanel, 558 F.
Supp. 2d at 538 (citing Louis Vuitton, 211 F. Supp. 2d at 583
(quoting SecuraComm Consulting Inc. v. Securacom Inc., 166 F.3d
182, 187 (3d Cir. 1999))).

In this case, to establish federal trademark counterfeiting,
the record must show that (1) the defendants infringed a registered
trademark in violation of the Lanham Act, 15 U.S.C. 114(1)(a), and
(2) intentionally used the trademark knowing it was counterfeit or
was willfully blind to such use.  Louis Vuitton Malletier & Oakley
Inc. v. Veit, 211 F. Supp. 2d 567, 581 (E.D. Pa. 2002); Playboy
Enter., Inc. v. Universal Tel-A-Talk, Inc., 1998 WL 767440, at *7
(E.D. Pa. Nov. 3, 1998).  "Willfulness can be inferred by the fact

15

that a defendant continued infringing behavior after being given notice." Louis Vuitton, 211 F. Supp. 2d at 584.

Both factors are established here. Plaintiff has stated a cause of action that defendants infringed on its trademarks. It has also shown that defendants intentionally continued to use the trademarks after they were notified of their infringing use. Therefore, defendants' conduct can be considered willful.

Having concluded that defendant's conduct was willful, the Court must decide the appropriate damages. If the damages are not for a "sum certain or for a sum which can by computation be made certain," Fed. R. Civ. P. 55(b)(1), the court can conduct a hearing, Fed. R. Civ. P. 55(b)(2). A hearing is not required, however, when statutory damages are involved because the very purpose of statutory damages is to provide the plaintiff with relief when damages are not assessable due to the defendant's conduct. Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc., Nos. 03 C 5311 and 03 C 4844, 2008 WL 1775512, at *3-4 (N.D. Ill. Apr. 17, 2008). "In the absence of clear guidelines for setting a statutory damage award, courts tend to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors developed in fixing a statutory damage award for copyright infringement." Louis Vuitton, 211 F. Supp. 2d at 583. The factors considered for statutory damages in copyright infringement are:

(1) the expenses saved and the profits reaped; (2) the

revenues lost by the plaintiff; (3) the value of the
copyright; (4) the deterrent effect on others besides the
defendant; (5) whether the defendant's conduct was innocent or
willful; (6) whether a defendant has cooperated in providing
particular records from which to assess the value of the
infringing material produced; and (7) the potential for
discouraging the defendant.

Phillip Morris USA, Inc. v. A & V Minimarket, Inc., 592 F. Supp. 2d
669, 673 (S.D.N.Y. 2009).

Plaintiff asks for $50,000 per violation for four
infringements ($200,000 in total): (1) defendants' Marlton store is
named "Bad Boy Club Surf-Skate-Snow;" (2) the sign at the exterior
of the store includes the "Bad Boy Club" character mark; (3)
defendants used the "Bad Boy Club" mark as the name of their
Morristown store; and (4) defendants have utilized, through
advertising and listing, the "Bad Boy Club" and "Bad Boy" marks on
the World Wide Web.[11]  Plaintiff, however, does not address any of
the factors the Court should consider in determining statutory
damages or provide any explanation for the specific amount
requested.  Without detailed affidavits to support their requested
amount of damages, the Court might be inclined to award the minimum
amount of damages.  However, to do so here would undermine the
purpose of statutory damages to deter willful defendants.[12]  The

---

[11]Plaintiff provides a Google search print out, in Exhibit C
of the complaint, which shows plaintiff's marks being used in
advertising and listing defendants' store on multiple websites.
The Court notes that defendants also have a website,
bbcskate.com.

[12]Some courts have awarded statutory damages based on
plaintiff's estimation of defendant's profits or plaintiff's

Court notes that in cases of willful infringement, Congress has increased the maximum statutory damages by a multiple of ten, from $200,000 to $2,000,000.  To further the intent of Congress to deter willful conduct, the Court will apply the same multiplier to the minimum statutory damages amount to determine the appropriate statutory damages in this case.[13]  Therefore, the Court will award $10,000 per violation, which is ten times the minimum statutory damage amount.   This amount recognizes defendants' willful conduct, penalizes them for failure to appear in this action, and will serve both as a specific deterrent for these defendants and a general deterrent for others contemplating the infringement of valid trademarks.

The Court further finds that there are four infringements of the marks.  Two infringements involve the use of the "Bad Boy" mark in the Marlton store name and on the World Wide Web.  Two infringements involve the "Bad Boy Club" character mark on the exterior sign at the Marlton store and on the World Wide Web.  The Court does not count as a violation the marks used at the

---

specific reasons why the minimum should not be awarded.  See Chanel, 558 F. Supp. 2d at 538 (allowing statutory damages to be awarded in the amount that the plaintiff estimated to be actual damages); Louis Vuitton, 211 F. Supp. 2d at 585 (awarding $1.5 million for the use of eight marks due to the egregious conduct of the defendants and their use of the internet).  Plaintiff has not offered such proofs in this case.

[13]While Congress has established an increased maximum for statutory damages when there is willful conduct, they fail to specifically increase the minimum.

Morristown store because it was closed prior to defendants' being notified of their infringement, and, therefore, there is no proof that their use was willful.  Accordingly, total statutory damages awarded will be $40,000.

### b. Permanent Injunction

Plaintiff is also seeking a permanent injunction.  A permanent injunction is another remedy offered by the Lanham Act.  15 U.S.C. § 1116(a).  In deciding whether to grant a permanent injunction, the Court must consider whether: (1) the moving party has shown actual success on the merits; (2) the moving party will be irreparably injured by the denial of injunctive relief; (3) the granting of the permanent injunction will result in even greater harm to the defendant; and (4) the injunction would be in the public interest.  Gucci America, Inc. v. Daffy's, Inc., 354 F.3d 228, 236-37 (3d Cir. 2003) (citing Shields v. Zuccarini, 254 F.3d 476, 482 (3d Cir. 2001)).

### i. Success on the Merits

The Court has found that plaintiff has established a cause of action under the Lanham Act.  Consequently, the first factor weighs in favor of plaintiff.

### ii. Irreparable Harm

Irreparable harm "must be of a peculiar nature, so that compensation in money alone cannot atone for it."  Opticians, 920 F.2d at 195 (quoting Morton v. Beyer, 822 F.2d 364, 372 (3d Cir. 1987)).  Grounds for finding irreparable injury include loss of

control of reputation, loss of trade, and loss of good will.  Id.
(citing 2 McCarthy, at § 30:18).  "Potential damage to reputation
constitutes irreparable injury . . . in a trademark case."  Id.
Moreover, irreparable injury can be based on the possibility of
confusion.  Id. at 196.  Courts have held that trademark
infringement amounts to irreparable injury as a matter of law.  S &
R Corp. v. Jiffy Lube Intern., Inc., 968 F.2d 371, 378 (3d Cir.
1992); Opticians, 920 F.2d at 196.  Here, because the Court has
found that there is a likelihood of confusion, the second factor
weighs in favor of plaintiff.

### iii. Balance of Harm

Defendants' use of plaintiff's marks is causing harm to
plaintiff.  Even though defendants might suffer some economic
losses if they are unable to use "Bad Boy" and "Bad Boy Club," they
would have not been subjected to such harm had they not improperly
used plaintiff's marks.  See Opticians, 920 F.2d at 197 ("[T]he IOA
can hardly claim to be harmed, since it brought any and all
difficulties occasioned by the issuance of an injunction upon
itself.").  Thus, the balance of harm weighs in favor of plaintiff.

### iv. Public Interest

"Public interest can be defined a number of ways, but in a
trademark case, it is most often a synonym for the right of the
public not to be deceived or confused."  Opticians, 920 F.2d at 197
(citing 2 McCarthy, § 30:19).  Because the Court has found that
there is a likelihood of consumer confusion due to defendants' use

20

of plaintiff's trademarks, and that such confusion will likely continue, the public interest would be damaged if a permeant injunction is not issued.  See id. at 198 ("Having already established that there is a likelihood of consumer confusion created by the concurrent use of the Guild marks, it follows that if such use continues, the public interest would be damaged.").  Thus, the final factor also weighs in favor of plaintiff.

Because all four factors weigh in favor of plaintiff, the Court will grant plaintiff's request to permanently enjoin defendants from using plaintiff's marks, "Bad Boy" and "Bad Boy Club."

### c. Attorney's Fees and Costs

Plaintiff has also requested attorney's fees and costs. "Reasonable attorney's fees may be awarded in exceptional cases; exceptional cases include those where the court has made a finding of willingness."  15 U.S.C. § 1117(a); Seruracomm, 224 F.3d at 280; Louis Vuitton, 211 F. Supp. 2d at 567.  Plaintiff is also entitled to recover costs it incurred in this action, including filing fees, photocopying fees, and postage expenses, if there is a finding of willfulness.  15 U.S.C. § 1117(a).  Because the Court has found that defendants have acted willfully, plaintiff is entitled to attorney's fees and costs.  The Court has reviewed plaintiff's counsel's certification of attorney's fees and costs.  Plaintiff requests $18,537.08 in attorney's fees and $869.97 in costs.  These

expenses appear to be reasonable and fair.[14]   Therefore, plaintiff is entitled to recover its requested attorney's fees and costs.

**IV.   CONCLUSION**

For the reasons expressed above, plaintiff's motion for default is granted.  Plaintiff's motion for default judgment is granted on counts 1, 2, and 6 and denied on count 4.  All other counts and claims against Michael Shoppe are dismissed per plaintiff's request.  Statutory damages are awarded to plaintiff in amount of $40,000 along with $18,537.08 in attorney's fees and $869.97 in costs.  A permanent injunction will be issued ordering defendants to stop using plaintiff's trademarks.

An appropriate order will be entered.

Date: July 15, 2009                    s/ Noel L. Hillman

At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

[14]Plaintiff's counsel charged $240 and $325 per hour for their services and other cases have awarded attorney's fees with similar hourly rates.  See Chanel, 558 F. Supp. 2d at 539 (holding that Chanel's counsel's charged rates of $275 and $350 per hour of their services was reasonable and fair).